## McALESTER FUEL CO. et al. v. SAN ANTONIO PUBLIC SERVICE CO.

### No. 5773.

Circuit Court of Appeals, Fifth Circuit

May 16, 1930.

Eugene P. Locke and Albert S. Johnson, both of Dallas, Tex. (Locke, Locke, Stroud & Randolph, of Dallas, Tex., on the brief), for appellants.

Howard Templeton and S. J. Brooks, both of San Antonio, Tex. (Templeton, Brooks, Napier & Brown, of San Antonio, Tex., on the brief), for appellee.

Before BRYAN and FOSTER, Circuit Judges, and GRUBB, District Judge.

BRYAN, Circuit Judge.

The McAlester Fuel Company, an Oklahoma corporation, filed a bill in equity to enjoin the San Antonio Public Service Company, a Texas corporation, from breaching a contract between them by discontinuing the purchase of lignite, and substituting gas for use as fuel in an electric power plant at New Braunfels, Tex.

The contract in question was originally entered into between the fuel company and the Comal Power Company, but the rights and liabilities of the latter were assignable and were assigned to the public service company. It provided for the purchase by the power company of weekly installments, within prescribed minima and maxima limits, of lignite, during the period beginning July, 1926, and ending August 31, 1931; and contained a clause which provided "that in the event the Power company should, during the life of this contract, or any extensions hereunder, find itself in position to effect the purchase of other fuel than lignite on a basis more advantageous than is provided hereunder, the Power company may, after giving the Fuel company ninety days' notice in writing, cancel the unexpired portion of this contract by paying to the Fuel company, in cash, as liquidated damages, on or before the date said cancellation is to become effective, an amount equivalent to Seven Hundred ($700.00) Dollars per month for each month of the unexpired term of this contract and any extensions hereunder." The lignite was to be mined from the property of the Sandow Lignite Company, a Delaware corporation, transported to New Braunfels, and there de-

livered for $1.87 per ton; but this price was based upon an existing freight rate of $1.18 per ton, and was subject to be increased or diminished by the raising or lowering of freight rates, or the cost of labor at the mines.

The bill alleged that, in order to provide transportation, a railroad line was built by the Rockdale, Sandow & Southern Railroad Company, a Texas corporation, from the mines to a point on the main line of another railroad; that all the capital stock, except a few qualifying shares, of the complainant, of the lignite company, and of the railroad company, was owned by the McAlester Fuel Company, a Delaware corporation; that of the contract price, by mutual agreement between these affiliated corporations, the complainant was to receive 10 cents per ton for marketing, and the lignite company the balance, after deducting freight charges, for mining and as operator of the mines; that the public service company gave timely notice of cancellation, effective October 18, 1929, but was without right to cancel, because it had agreed to pay for gas necessary to operate its plant more than the contract price for lignite, and for other reasons which, in the view we take of the case, it is unnecessary to state; that with the knowledge of the public service company, and as contemplated by the contracting parties, the holding company and its subsidiaries spent in excess of $200,000 upon production and transportation facilities solely for the purpose of fulfilling the contract. A bill of intervention was filed by the Delaware corporations, that is to say, by the holding company and the lignite company, seeking the same injunctive relief as was sought by the original bill of complaint. The railroad company was a common carrier and a Texas corporation. It was not a party either to the original bill or the bill of intervention, doubtless for the reasons that its rates could not be fixed by contract, but were subject to be controlled by the Texas Railroad Commission, and that the trial court would not have had jurisdiction, since there would have been lacking the requisite diversity of citizenship. The public service company answered asserting that it acted within its rights in canceling the contract for lignite, because the necessary gas supply for its power plant was not more expensive and was a "more advantageous" fuel, and tendered as liquidated damages $700 per month for each month of the unexpired term, as provided in the event of a valid cancellation. It also filed a motion to dismiss the bills, and, upon final hearing, they were dismissed for want of equity. This appeal is taken by the original and intervening complainants.

We are of opinion that the view taken by the District Court was correct. A suit in equity in a court of the United States is prohibited in any case where there is a plain, adequate, and complete remedy at law. 28 USCA § 384. In the recent case of Henrietta Mills v. Rutherford County, 50 S. Ct. 270, 74 L. Ed. ——, decided April 14, 1930, it was held that resort to an equity suit was not justified by the mere fact that it is more convenient than an action at law. The corporation which was a party to the contract was entitled under its arrangement with its affiliated corporations to only 10 cents per ton for lignite, and the amount which it could claim was definitely fixed by the minimum provision of the contract. Aside from the question whether the holding company and the lignite company were privies to the contract, the amount recoverable could be definitely ascertained by the terms of the contract. If it was within the contemplation of the parties thereto that the Oklahoma corporation should cause expenditures to be made in increasing production and transportation facilities, those expenses were proper elements of damages, and such damages could not be increased by the intercorporate relations of the affiliated companies. On the other hand, if the expense of extending the facilities of the lignite company and the railroad company was not within the contemplation of the parties to the contract, it was not recoverable either at law or in equity. In either event, any expenditure of money contemplated by the contracting parties could be proved as easily in an action at law as in a suit in equity. It is argued that there was no other market for the lignite, and that therefore the remedy at law was inadequate. But there is nothing in that circumstance upon which jurisdiction in equity can be predicated, for the measure of damages under such a state of facts is well established. Appellants rely on Montgomery Light & Water Power Co. v. Montgomery Traction Co., 219 F. 963, a case which arose in a District Court of Alabama and was affirmed by this court. 229 F. 672. In that case the question whether the plaintiff had an adequate remedy at law was not raised; and, besides, it was held by the District Court that the damages which would ensue by a breach of the contract were so uncertain and speculative as that there could not be an adequate recovery in an action at law. Id. (C. C.) 191 F. 657, 660.

The decree of the district court is affirmed.