PIERCE PETROLEUM CORPORATION et al. v. EMPIRE GAS & FUEL CO. OF MAINE.

(Circuit Court of Appeals, Fifth Circuit. February 18, 1927. Rehearing Denied March 11, 1927.)

No. 4849.

1. Receivers ⬳16—Appointment of receiver for oil lessor, who refused to make agreement for operation of property pending determination of controversy held proper, under Texas statute (Vernon's Ann. Civ. St. Tex. 1925, art. 2293).

Where lessor of oil lands, after lessee had made extensive development, asserted a right to forfeit lease, thereby impeding further sales by lessee and making further development unsafe, refusing to enter into an agreement for development of property pending determination of controversy, *held*, appointment of receiver for lessor in suit by lessee was warranted, under Vernon's Ann. Civ. St. Tex. 1925, art. 2293.

2. Courts ⬳371(2)—Federal court, sitting in equity in particular state, may enforce a new equitable right created by statute.

A federal court, sitting in equity in Texas, may enforce a new right of an equitable nature, created by a statute of that state.

3. Mines and minerals ⬳73—Provision in lease for lessee's purchase of royalty oil held inapplicable to oil yet in ground.

Provision of oil lease for lessee's purchase of all lessor's royalty oil *held* applicable only to oil produced and brought to surface.

4. Appeal and error ⬳1170(1)—Decree appointing receiver in controversy over oil lease held not reversible for technical error not affecting substantial rights of appellant (Judicial Code, § 269, as amended by Act Feb. 26, 1919 [Comp. St. § 1246]).

Order appointing receiver for oil and proceeds pending controversy between lessor and lessee is not subject to reversal for technical error, in view of Judicial Code, § 269, as amended by Act Feb. 26, 1919 (Comp. St. § 1246), where substantial rights of both parties were fully protected.

Appeal from the District Court of the United States for the Northern District of Texas; James Clifton Wilson, Judge.

Suit by the Empire Gas & Fuel Company of Maine against the Pierce Petroleum Corporation and others. From a decree for plaintiff, defendants appeal. Affirmed.

Warren Scarborough and Alfred McKnight, both of Fort Worth, Tex. (Alvin Untermyer and Guggenheimer, Untermyer & Marshall, all of New York City, and Capps, Cantey, Hanger & McMahon, of Fort Worth, Tex., on the brief), for appellants.

Edwin T. Phillips and David B. Trammell, both of Fort Worth, Tex. (J. W. Finley, S. N. Hawkes, of Bartlesville, Okl., and Phillips, Trammell & Chizum, of Fort Worth, Tex., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. This is an appeal from an interlocutory decree appointing a receiver, pursuant to the prayer of an amended bill, duly verified, filed by the appellee, Empire Gas & Fuel Company of Maine. The following state of facts is disclosed by the averments of that bill:

In June, 1923, one of the appellants, the Pierce Oil Corporation, the predecessor of the other appellant, Pierce Petroleum Corporation, "granted, demised, leased, and let" to the appellee a described 100 acres of land in Wichita county, Tex., "for the sole and only purpose of operating for and producing oil, gas, coal, and other minerals thereon and therefrom." That lease contained the provision:

"Lessee agrees to deliver to the credit of lessor, free of cost, into the pipe line with which it may connect its wells, the equal one-eighth part of all oil produced and saved from the leased premises; the lessee may purchase the oil so delivered into the pipe line to the credit of lessor, at the highest bona fide price which the lessor may be offered at the time and day of delivery."

Appellee paid the lessor a cash consideration of $30,000 for that lease. Within the time allowed by extensions of the time prescribed for drilling operations, and before any dispute between the parties to this suit arose, appellee complied with its drilling obligations, and drilled on the land 15 wells, at a cost of approximately $170,000, some of the wells being dry and others producers. Division orders authorizing, first the Texas Company, and next the Panhandle Refining Company, were executed by the parties to the lease, the date of the last division order being January 10, 1925. By written communications, dated December 29, 1925, appellant Pierce Petroleum Corporation notified the Panhandle Refining Company that the lease was canceled, and demanded payment to the former of all sums payable by the latter in respect of gas or oil taken from the leased land, and notified appellee that the lease was repudiated and canceled because of alleged fraud in the execution of it, and lack of authority of those who acted in behalf of the lessor in making the lease, and that appellee would be held liable for what had been done or thereafter should be done by appellee under or pursuant to the lease.

The bill contained allegations to the following effect: Because of said notice to the Panhandle Company, that company refused

to pay for the oil from the leased premises. The giving of said notices precluded adequate drilling and development by appellee. It was necessary to continue development and operations in order to obviate drainage from offset wells around the leased property, and in order to prevent deterioration of wells then producing on the property, and to obviate the loss of flush production; it was impracticable to store the oil on the premises, and, if that could be done, the quality of the oil would deteriorate. Appellants are claiming and will contend that appellee is not and will not be entitled to any deductions or credits for expenses incurred or to be incurred in drilling or other operations on the leased premises, and have refused to agree to any arrangement whereby said property could be properly operated, developed, and protected against drainage and. loss for the benefit of all parties as their interests may be determined.

The order appointing the receiver contained provisions to the following effect: The receiver is not required personally to operate or develop the lease, but is authorized and directed to enter into an operating agreement with appellee, under which all oil, etc., produced from the lease shall be run to and for the account of the receiver, the receiver alone to have the right to sell such products at the best price obtainable; the appellee shall not receive any compensation for developing and operating the lease, but at intervals of 30 days may make application to the court for reimbursement out of the proceeds of seven-eighths of the sales of oil, etc., produced for expenses actually incurred in operating and developing the lease, the receiver and the appellants to have written notice of such application, which is to be granted only after hearing by the court of objections made by the receiver or the appellants; appellants to have the right at any time to file written objections to appellee's manner of operating and developing the lease, and to have such objections passed on by the court. Upon application to the court appellant may have one-eighth of the proceeds of sales of oil, etc., produced from the lease paid to the appellant having title thereto, without prejudice to any claim made by appellants. The order to stand and remain in effect until the judgment of the court shall be rendered on the pleas in abatement filed in the suit, at which time the receivership may be dismissed, or the order re-entered or modified, as the court may determine.

The effect of the order appealed from was to enable the appellee to continue to operate and develop the lease, without receiving any oil, etc., produced, or any part of the proceeds of sales, except from seven-eighths of the proceeds of oil, etc., produced, the amount of its actual expenses of operating and developing, and to enable the lessor to get, while the suit was pending, the royalty to which confessedly it was entitled. The record discloses that the appellee contended that the lease was valid, and that the appellants were estopped to repudiate it, even if it was originally invalid on any ground suggested, and that appellants contended that the lease was a nullity, and that, as against the appellee or any one claiming under it, the owner of the leased premises was entitled to all oil produced therefrom, without any deduction for the cost or expense or producing it. It well might be inferred that the situation was such as to make it, in the absence of judicial relief, if not impossible, exceedingly difficult and hazardous for the appellee to continue to develop the leased premises and to produce oil therefrom while the dispute as to the title was pending. It is not to be supposed that any third party would buy from appellee oil produced, and pay what it was worth, in the face of the assertion of an adverse title to it. Though it was possible for the appellee, being in possession, to continue operations, the risks to be incurred by its doing so were such as to constitute a substantial impediment to development of the property, as the required expenditure of money and labor would be made at the risk of appellee getting nothing in return therefor.

[1, 2] A Texas statute (article 2293, Vernon's Ann. Civ. St. 1925) provides: "Receivers may be appointed by any judge of a court of competent jurisdiction of this state, in the following cases: 1. In an action * * * between partners or others jointly owning or interested in any property or fund, on the application of the plaintiff or any party whose right to or interest in the property or fund or the proceeds thereof is probable, and where it is shown that the property or fund is in danger of being lost, removed or materially injured." Under this provision a receiver may be appointed at the instance of one claiming to be jointly interested in any property or fund, though he is in possession of the property or fund, and his title or interest therein is disputed. A federal court sitting in equity in Texas may enforce a new right of an equitable nature created by a Texas statute. Rich v. Brax-

ton, 158 U. S. 375, 405, 15 S. Ct. 1006, 39 L. Ed. 1022.

[3] The averments of appellee's bill showed that appellee and the lessor in the lease mentioned were jointly interested in the oil, etc., in or under the land described, as that instrument contained no words of transfer or conveyance as to one-eighth of the oil in or under that land; the provision as to the lessee purchasing the lessor's share of oil, etc., applying only to what was produced or brought to the surface. W. T. Waggoner Estate v. Wichita County (C. C. A.) 3 F. (2d) 962; Id., 47 S. Ct. 271, 71 L. Ed. —— (Oct., 1926, Term). It seems that the order appealed from was a justifiable exercise of the power conferred by the cited statute, as the effect of it did not extend beyond temporarily preventing the loss or injury of the subject of controversy, and there was a showing that the right asserted by the appellee probably existed.

[4] But, whether that order was or was not technically free of error, it well may be concluded that no substantial right of the appellants was affected by providing for the oil remaining under the surface being saved and brought to the surface at the actual and reasonable cost of doing so; the rights of the appellants being fully safeguarded as to oil produced, except as to so much of seven-eighths of it as was required to pay the necessary expense of extracting it, that expense being incurred under the court's supervision. The order in question is not subject to be reversed because of a technical error, which did not affect the substantial rights of the appellants. Judicial Code, § 269, as amended (40 Stat. 1181 [Comp. St. § 1246]).

We conclude that the record does not show that the appellants were substantially prejudiced by the decree appealed from. That decree is affirmed.