### FIRST NAT. BANK OF MEMPHIS, TENN., v. HORUFF et al.

#### No. 6822.

Circuit Court of Appeals, Fifth Circuit.
May 25, 1933.

H. R. Boyd, of Memphis, Tenn., and Stamps Farrar, of New Orleans, La., for appellant and cross-appellee.

John C. Theus, of Monroe, La., for appellees and cross-appellants.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit·Judges.

SIBLEY, Circuit Judge.

The District Court ordered its receiver in equity to surrender lands in his possession to a state court to complete the foreclosure therein of a mortgage on them begun before the bill was filed in the District Court, but on condition that the receiver's certificates issued to pay taxes and redeem from a prior tax sale be first paid, together with moderate fees fixed for the receiver and his counsel. The mortgagee appeals because the surrender was not made unconditionally, and the receiver and his counsel appeal because it was made at all and because the fees allowed were too small.

The surrender was put by the District Judge both on priority of jurisdiction in the state court and on comity due to the special circumstances. On July 9, 1929, the First National Bank of Memphis, a Tennessee corporation, as assignee of a debt secured by a notarial act of mortgage given by Robert York and Mary Trigg, citizens and residents of Tennessee, on timberlands in Concordia parish, La., sought foreclosure by executory process against the lands in the state court of that parish. The court on July 11, 1929, granted its order for process to issue for the seizure and sale of the land and appointed a curator ad hoc to represent the absent defendants and caused the curator to be served with the notice necessary to be given in such cases five days before seizure of the property. The executory process was, however, not actually issued, and seizure was not made because Robert York, who was the president of a corporation to which the lands had been conveyed with assumption by it of the mortgage, repeatedly requested postponement of the seizure that he might raise and pay the balance due. The notarial mortgage, solemnly executed before a notary and two witnesses and containing a covenant not to alienate the property to the prejudice of the mortgagee, affords under Louisiana law all the evidence necessary to pronounce judgment and to order sale subject to written notice for five days issued by the clerk and served by the sheriff on the curator ad hoc appointed when the mortgager is nonresident. An alienee subject to such a mortgage may be ignored. Stevens v. Pinneo, 26. La. Ann. 618; Interstate Trust & Banking Co. v. Powell Bros. & Sanders, 128 La. 1004, 55 So. 654. The proceedings were therefore regular according to Louisiana law, but were essentially in rem, the only service on the parties at interest being substituted service, and jurisdiction in the court depended at last on seizure and control of the res. On June 20, 1930, while matters so stood, York claiming to be a creditor without lien of the vendee corporation which was chartered in Delaware and had its principal place of business in Memphis, Tenn., but an agent for service of process in Louisiana, filed his bill in the District Court in Louisiana seemingly under section 8 of Act No. 159 of Louisiana Acts of 1898, which permits protective receiverships by consent for embarrassed but not insolvent corporations, and served the corporation's agent for service, but did not make the mortgagee bank a party nor disclose the pendency of the mortgage foreclosure. He exhibited a resolution of consent to the receivership passed by his corporation and signed by him as president. The receiver appointed took charge of the mortgaged land, which constituted the only corporate assets, issued under the court's order receiver's certificates for $12,000 and used the money so raised to pay off pending taxes on the land and to redeem a tax sale to the mortgagee bank for $4,900. The bank must have known of the receivership, though it was no party to the bill, for the check given it was signed by the receiver and its receipt was given to him as such. A litigation about the title to the land was also defended by the receiver. In December, 1930, the bank petitioned the District Court to vacate its receivership of the land and to permit the state sheriff to seize and sell it in the mortgage foreclosure. The orders first above stated resulted.

It is said that the state court, proceeding in rem, had not perfected its jurisdiction by an actual seizure of the res, nor even put a process in its officers' hands by which a constructive seizure might be established, and that the District Court by making an actual seizure of the res has priority of jurisdiction; the case standing differently from those in which the jurisdiction rests on personal service of the owner of the res to be controlled, as

in ordinary mortgage foreclosures or receiverships, where the filing and entertaining of the bill followed by timely service makes an effective assumption of jurisdiction. Whether the distinction be well taken or not, we think it ought not to control in a matter of comity between the state and federal courts where the superior and exclusive jurisdiction of the latter in bankruptcy or admiralty is not involved, and where prompt seizure of the res by the court whose jurisdiction was first invoked is delayed at the instance of the party at interest who, without disclosing the pending proceeding, procures a consent receivership and is apparently the sole party interested in maintaining it. All these circumstances appear in the present case; and in the face of them, even if the federal court has the right to detain the property from the state court, it ought not to do so. Harkin v. Brundage, 276 U. S. at page 55, 48 S. Ct. 268, 72 L. Ed. 457. The result, whether or not so intended, smacks too much of sharp procedure. But in thus yielding through comity to the state court, the federal court by reason of the delay and intervening occurrences is not without rights and duties. Perhaps it acted erroneously in appointing a receiver at the instance of a creditor without lien and with no insolvency alleged because the state law allows such on consent. See Pusey & Jones Co. v. Hanssen, 261 U. S. 491, 43 S. Ct. 454, 67 L. Ed. 763; Henrietta Mills v. Rutherford County, 281 U. S. 121, 50 S. Ct. 270, 74 L. Ed. 737; and compare Pierce Petroleum Corp. v. Empire Gas & Fuel Co. (C. C. A.) 17 F.(2d) 758. But it cannot be said that it acted wholly without jurisdiction because the District Court has general chancery powers and the defendant was personally served. Its proceedings were not wholly void. Grant, Receiver, v. A. B. Leach & Co., 280 U. S. 351, 50 S. Ct. 107, 74 L. Ed. 470. Its receiver's certificates, though issued without notice to the mortgagee bank and subject therefore to review at its instance, Union Trust Co. v. Illinois Midland R. R. Co., 117 U. S. 434, 6 S. Ct. 809, 29 L. Ed. 963, were under the evidence produced manifestly proper, and the bank itself was a large and direct beneficiary of them. All the activities of the receiver and his counsel were necessary to the preservation of the res while as yet unseized by the state court. The authority of the court of receivership was not superseded by a superior authority as by the occurrence of bankruptcy in Gross et al. v. Irving Trust Co., Trustee, 289 U. S. ——, 53 S. Ct. 605, 77 L. Ed. ——. It properly fixed the compensation of its officers and protected the purchase of its re-

ceiver's certificates by requiring payment before surrendering the property in its possession. Harkin v. Brundage, 276 U. S. at page 57, 48 S. Ct. 268, 72 L. Ed. 457.

We find no occasion to interfere with the discretion of the court in fixing $750 and $500 beside expenses as the respective fees of receiver and his counsel.

Judgment affirmed.